IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES A. KERR,

          Plaintiff,

vs.                                       No. CIV 98-73 JC/LFG

BURLINGTON NORTHERN and
SANTA FE RAILWAY COMPANY,

          Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on motions filed by Defendant Burlington Northern and Santa Fe Railway Company ("BNSF") and various discovery disputes, including:

1. Defendant Burlington Northern and Santa Fe Railway Company's Motion for Reconsideration, and for Protective Order [Doc. 58], and

2. BNSF's Motion to Strike Plaintiff's Expert Witness Report, Expert Witness Affidavit and Plaintiff's Affidavit [Doc. 61].

This lawsuit is mired in a bog of discovery disputes. So as to resolve pending discovery matters and to ensure that this case is placed back on a case management track so that dispositive motions may be resolved on the merits, or, alternatively, that the case be tried, the Court is consolidating various discovery disputes, and, where necessary, issuing *sua sponte* orders concerning discovery.

### Motion for Reconsideration or For Protective Order

Discovery is not complete in this case and, to date, neither side knows which train is alleged to have caused the injuries suffered by Plaintiff James A. Kerr ("Kerr"). BNSF demonstrated that during a twenty-four hour period, some sixty-four trains travel the tracks in the area where Kerr was

injured. In Kerr's initial discovery requests, and 30(b)(6) notice, he failed to identify with particularity the train involved or even give some reasonable time frame from which BNSF could produce an appropriate witness to answer train-specific questions concerning the accident. Thus, on September 29, 1998, this Court granted a protective order stating:

> [I]t is unreasonable to expect Burlington to produce a witness to testify as to the details concerning a specific train when it is provided with insufficient information to assist it in determining which of sixty-four trains allegedly caused the injury. Since Plaintiff's inquiries were specific to the train involved, it was incumbent on Plaintiff to provide specific information concerning the train, or at least sufficient information from which Burlington, after reasonable inquiry, could produce a deponent to answer questions about the specific train.

(Court's Order, p. 4). The Court noted that Kerr's deposition of the 30(b)(6) witness should be limited to the matters set forth in the notice of deposition. See, e.g., Paparelli v. Prudential Insurance Co. of America, 108 F. R. D. 727 (D. Mass. 1985).

As a result of Kerr's inability to more specifically identify the train, or at least provide information from which BNSF could, after reasonable inquiry, answer questions about the train or trains which were probably involved in the incident, discovery came to a halt.

In a subsequent order, the Court noted that Kerr finally limited his inquiry to a more reasonable period of time, and, therefore, the Court ordered BNSF to produce a 30(b) witness. In the present motion for reconsideration, BNSF correctly notes that the one or two hour window mentioned by the Court did not appear in Kerr's 30(b)(6) notice of deposition. Indeed, the only reference to this "window of opportunity" appears in Kerr's argument in his motion to compel. BNSF argues, "It is beyond dispute that Kerr cannot through argument in a Motion to Compel expand the subject matter set forth in his 30(b)(6) Notice of Deposition." (Motion for

reconsideration, p. 5). While this may be true, it is clear that this information now provides BNSF with a significantly narrow window of time within which this accident could have occurred. In his affidavit, Kerr states he left the City Limits Bar on the evening of February 14, 1997 at 11:00 p.m. He could see the train and the tracks from the bar and begin walking slowly home. He states that he took a short-cut down a dirt road crossing the tracks and that the accident occurred as Kerr was climbing over the train's couplings. As the train lurched, he was severely injured.

Based on this affidavit, the accident had to occur after 11:00 p.m. Because no significant delay is noted between the time Kerr left the bar and walked down the road toward a train that was stopped and visible from the bar, the accident probably occurred within a space of one hour from the time Kerr left the bar.

While it may be somewhat unorthodox for the Court to modify a 30(b)(6) notice, it appears an appropriate, expeditious and economical way to resolve the discovery dispute and to get this case under Court management. The Court will require BNSF to produce a witness who can respond to questions in Kerr's 30(b)(6) notice of deposition for trains that were stopped on the tracks near the City Limits Bar on February 14, 1997, between the hours of 11:00 p.m. and 12:30 a.m. By limiting the notice to trains that were actually stopped on the track within one and one-half hours from 11:00 p.m., BNSF can produce a 30(b)(6) deponent to answer questions about the train that was most likely involved. With this clarification, the Court will grant in part and denies in part BNSF's motion for reconsideration. The Court grants the motion to reconsider in part by placing limits on the type of witness or witnesses that need be produced by BNSF. The Court denies the motion for reconsideration insofar as BNSF seeks to absolve itself of any responsibility of producing a further deponent.

The Court will reopen discovery and allow sixty days, or until February 12, 1999, for Kerr to proceed with and complete the 30(b)(6) deposition.

**Motion to Strike Plaintiff's Expert Witness Report, Affidavit and Plaintiff's Affidavit**

This motion concerns Kerr's failure to comply with disclosure obligations under Fed. R. Civ. P. 26. Pursuant to the Court's case management deadlines, Kerr was to designate his experts and produce a Rule 26 expert report by June 23, 1998. As a result of Kerr's delay in submitting his report, the Court granted BNSF's request for additional time to submit its expert report. On August 5, 1998, Kerr submitted an "Expert Disclosure and Report" to BNSF. BNSF now seeks to strike the report because it is untimely and not in compliance with Fed. R. Civ. P. 26.

The rules of discovery applicable to civil proceedings in federal courts were dramatically changed in December 1993. These changes require automatic disclosure of specific information without the opposing party making a discovery demand. The disclosures include mandatory initial disclosures, Rule 26(a)(1); disclosure of expert testimony and reports, Rule 26(a)(2); and disclosure of trial evidence, Rule 26(a)(3). Rule 26(a)(2) requires disclosure of the identity of a party's expert, together with disclosure of the expert's detailed report. The rules of procedure require that the written report "shall contain" the following six items:

1. a complete statement of all opinions to be expressed and the basis and reasons therefor;

2. the data or other information considered by the witness in forming the opinion;

3. any exhibits to be used as a summary of or support for the opinion;

4. the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years;

5. the compensation to be paid for the study and testimony; and

4

6. a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

A review of Kerr's expert report shows that it is deficient in all areas. It provides virtually no useful information concerning the present case and provides little information concerning the opinions to be offered.

The mandatory disclosure obligations are intended to further the salutary purposes of the Civil Justice Reform Act, 28 U.S.C. § 471 *et seq.* Advance knowledge of an opponent's proof on a claim or defense is an invaluable aid in deciding whether to settle or litigate. If a party is better able to evaluate the strength and weakness of the case, settlement is more likely. Similarly, if the case is one that must be tried, advance knowledge of the opponent's evidence assists in preparing to meet the proofs at trial. The case can be presented more efficiently, expeditiously and economically, thus, fulfilling the purposes of the Civil Justice Reform Act.

The Advisory Committee Commentary to Rule 26(a) states: "This subdivision [26(a)] imposes a duty on parties to disclose, without awaiting formal discovery requests, certain basic information that is needed in most cases to prepare for trial or to make an informed decision about settlement." The very basic information contemplated by the Advisory Committee is lacking in Kerr's expert's report.

Trial by ambush is not an acceptable litigation strategy. The new disclosure rules, when considered in light of the liberal discovery favored by federal courts, mandate full disclosure at an early stage of the proceedings. Indeed, this report must be "a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." Advisory Committee Commentary, ¶ 2.

Just as the scope of expert disclosure is great, so, too, are the risks for non-compliance. Again, the Committee Commentary is helpful. "Revised Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed." *Id.* Here, it is clear that Kerr violated both the letter and the spirit of Fed. R. Civ. P. 26(a)(2). Kerr's expert starts out conceding that he doesn't have sufficient materials to "better understand the circumstances concerning this train-pedestrian incident . . . ." He didn't know which train was involved, what time it arrived or departed, which track was being used, the direction of travel, and whether there were forward or reverse movements. He hadn't reviewed deposition testimony and admitted an "on-sight inspection needs to be performed in order for me to make final opinions regarding adequate protection of pedestrians near the subject railroad right-of-way."

Indeed, a review of the expert report fails to disclose what opinion the expert intends to offer at the time of trial or the basis for any opinion that will be expressed. Kerr's expert refers to a national custom and practice of undertaking affirmative safety precautions, including patrols, fences, sinage and safety presentation, but doesn't state that the railroad in this case was deficient in any area. He refers to railroad train crews having a number of rules, regulations, bulletins and notices and instructions to govern their activities, but fails to state whether there were any violations of such rules, regulations, bulletins or instructions. Similarly, the expert refers to railroad industry standards which have been developed to require crew members "to keep a sharp lookout," but fails to state whether there is any evidence to support any inference that BNSF railroad employees breached any such railroad industry standards. Finally, the expert states that Rule 15(c) of the General Code of Operating Rules requires an engineer to sound two long blasts of the engine whistle or horn prior to

6

starting forward movement of a train. Even with this statement, the witness does not offer any opinion as to whether the engineer failed to sound the whistle or horn. While Kerr testifies that he did not hear a whistle or horn, his expert makes no mention of whether BNSF violated any operating rules.

The report fails to include a complete statement of the opinions that the expert intends to express at trial and the reasons therefor. The report fails to disclose the information which the expert considered in formulating his opinion. The exhibits to be used at trial are not disclosed. The report contains no information concerning the witness's qualifications or publications. Finally, there is no information concerning other cases in which the witness has testified as an expert at trial or by deposition within the last four years. The report, on its face, is designated as a "initial report."

The rules of civil procedure do not contemplate "initial reports" or "preliminary reports" followed by "supplementary reports." Rather, the rules mandate production of a detailed and complete report with full disclosure of opinions. To allow otherwise would thwart opposing counsel's ability to evaluate the strength and weakness of a case. There would be no finality to expert reports, as each side, in order to buttress their case, could "supplement" existing reports and modify opinions previously given. This would circumvent the full disclosure requirement explicit in Rule 26 and would interfere with the Court's ability to set case management deadlines because new reports and opinions would warrant a new round of consultation with one's own expert and perhaps require a new round of depositions. This process would hinder rather than facilitate settlement negotiations and trials.

The Court similarly rejects Kerr's contention that if BNSF wanted to know the nature and extent of the expert's opinion, the expert could have been deposed. This argument was soundly

rejected in Sylla-Sawden v. Uniroyal Goodrich Tire Co., 47 F.3d 277 (8th Cir.), *cert. denied*, 116 S. Ct. 84 (1995). There, a party failed to file a timely expert report and failed to comply with the disclosure requirements of Rule 26. The expert report contained a twenty-line affidavit without all of the information required by the Rule. Defendant filed a motion in limine seeking to exclude the expert or to limit the "expert" testimony. The plaintiff argued that the expert was available for deposition and, thus, the full extent of the expert's opinion could be discovered. The court soundly rejected this argument and limited the expert's opinion at trial to the information provided in his initial report. On appeal, the 8th Circuit affirmed the trial court's ruling, stating: "[T]he failure to comply with the scheduling order is not excused because [defendant] elected to depose Kelsey [the expert]." *Id.* at 284. To rule otherwise would frustrate the purpose of the new rule, which is, "[T]he elimination of unfair surprise to the opposing party and the conservation of resources." *Id.* at 5. The court concluded "The necessity of the deposition frustrated the purpose of the district court's scheduling order and today would likewise frustrate the purposes of 26(a)(2)(B)." *Id.*

The Court does not lightly approach a motion to strike an expert report. The consequences can be serious and can leave a plaintiff without the ability to prove his claim. On the other hand, the Court cannot condone the Kerr's wholesale failure to comply with disclosure obligations.

At least one of the reasons why the expert was unable to fully comply with Rule 26 was because certain information concerning the train involved in the accident had not been provided. In the first portion of this decision, the Court authorized a 30(b)(6) deposition, and will now take the following action in reference to the expert report. The Court finds that the report is in non-compliance with the requirements of Rule 26 and orders that the report be stricken. The Court will authorize Kerr fifteen days from completion of the Rule 30(b)(6) deposition noted above to submit

8

a thorough and complete report in full compliance with Rule 26. If Kerr fails to submit a new report within the strict time constraints as indicated, then Kerr will be precluded from calling an expert at the time of trial.

By virtue of this ruling, in effect extending the time for Kerr to file an expert report, the Court will extend the time for BNSF to file a new report. BNSF will have thirty days from receipt of Kerr's expert report to provide Kerr with any new or revised expert report.

The Court now also strikes the expert witness affidavit and Kerr's affidavit because they do not constitute sworn testimony. Kerr did not respond to BNSF's argument that these documents were not properly sworn to or notarized. The failure to challenge this representation constitutes agreement with BNSF's position. Kerr will be afforded ten days within which to provide BNSF with a properly sworn and notarized affidavit.

_____
Lorenzo F. Garcia
United States Magistrate Judge


ATTORNEY FOR PLAINTIFF:
Derek V. Larson, Esq.

ATTORNEYS FOR DEFENDANTS:
John S. Thal, Esq.
Karen Scott Kool, Esq.