IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES A. KERR,

        Plaintiff,

vs.                                                                                                No. CIV 98-73 BB/LFG

BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO DISMISS BASED ON RULE 37

THIS MATTER is before the Court on Defendant Burlington Northern and Santa Fe Railway Company's Motion to Dismiss Based on Rule 37(d) [Doc. 52]. In accord with the district's motion practice rule, the motion, response and reply were simultaneously filed. Oral argument is not necessary, this matter may be resolved based on the parties' submissions.[1]

Defendant ("BNSF") seeks dismissal of Plaintiff James A. Kerr's ("Kerr") amended complaint as a Fed. R. Civ. P. 37 sanction. BNSF asserts that Kerr "wilfully and in bad faith attempted to mislead BNSF as to the existence of critical information concerning his medical and employment histories by giving false interrogatory answers" and because he "withheld crucial information in the face of clear, direct and unambiguous discovery requests by BNSF and two orders by Magistrate Judge Lorenzo Garcia." (Memorandum, p. 1).

---

[1] Resolution of discovery disputes and other preliminary, non-dispositive matters are within the Magistrate Judge's authority. Federal Magistrate Act of 1968, Pub. L. No. 90-578, 82 Stat. 1007, 28 U.S.C. § 636. Case dispositive rulings, however, are not. Id. Should the magistrate judge conclude that a Fed. R. Civ. P. 37 violation has occurred and that the appropriate sanction be a default judgment, a report and recommendation would be made to the district judge.

Kerr brings this action for damages as a result of injuries sustained when he was crossing between two train cars of a BNSF train. Kerr contends that while climbing between the two train cars, the train began to move and his leg was caught underneath the train when he lost his balance and fell from the couplings of the train cars. He suffered severe and permanent disabling injuries.

Kerr contends that as a direct and proximate cause of BNSF's acts and omissions, he "suffered permanent physical injuries which required medical treatment." (First Amended Complaint, ¶ 20). Kerr also asserts that he suffered "loss of household services, recreational activities, loss of enjoyment of life and a loss of earnings and earning capacity." (First Amended Complaint, ¶ 21). Finally, Kerr asserts that as a direct and proximate result of BNSF's negligence, he suffered and will continue to suffer "pain, suffering, mental anguish, emotional distress and permanent disfigurement." (First Amended Complaint, ¶ 23). With these allegations, it is beyond dispute that Kerr's physical, mental, emotional and financial conditions are at issue.

Under the federal rules of discovery, which are designed to "[m]ake a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Proctor & Gamble Co., 356 U.S. 677, 682, 78 S. Ct. 983, 986-87 (1958)(citing Hickman v. Taylor, 329 U.S. 495, 501, 67 S. Ct. 385, 388 (1947)), BNSF sought to obtain information relevant to Kerr's physical, mental, emotional and financial condition.

On April 16, 1998, BNSF served various interrogatories on Kerr. One of the interrogatories sought information relevant to Kerr's employment or activity from which he derived any form of compensation since leaving high school. The interrogatory required Kerr to provide information concerning employment or any activity from which he derived compensation, together with dates,

2

reasons for and type of termination, job titles, type of work performed, wages received, and identity of various supervisors at each place of employment.

In response to the first interrogatory, Kerr contended that he was a self-employed sub-contractor and identified a single employer, Hardcastle Construction. He did not identify any other employment or any other activity for which he received compensation. A fair reading of Kerr's response to the interrogatory would compel BNSF to believe that since he left high school, Kerr has been employed by only one employer, Hardcastle Construction, while the type of work he performed with Hardcastle varied, he was principally a framer and still employed up to the date of the accident. Kerr was less than candid in his responses concerning his participation in prior income-producing activity. While he reported a single job, with Hardcastle Construction Company, he failed to note that he served two years in the Army and was given a general discharge after being reported absent without leave.

The second interrogatory required Kerr to provide information concerning doctors or other professionals who have examined or treated him within the last ten years. Kerr was required to provide the name and address of hospitals, clinics, or institutions where he was ever hospitalized, treated or examined, together with information concerning the nature of any physical or mental disorder, impairment or injury which he suffered in the last ten years.

In reference to Kerr's response to the second interrogatory the only information provided by Kerr related to the accidental injury allegedly caused by a train on February 14, 1997 and his subsequent treatment, Kerr neither disclosed nor provided any prior medical history.

As a result of Kerr's failure to provide a complete medical history, BNSF filed a motion for extension of time for expert disclosures and further filed a motion to compel responsive answers to

interrogatories and the production of documents. On August 31, 1998, the Court entered an order granting BNSF's motion and directed Kerr to produce his medical history. The Court's order provided, "Kerr must fully respond to this interrogatory [No. 12], produce the information or, alternatively, file an affidavit outlining why he has been unable to secure the information, and to demonstrate with specificity, what steps he has taken to secure the information, who he has contacted, and why he has been unable to secure all of the information."

In response to the Court's order, Kerr supplemented his interrogatory answer to state:

ANSWER: Plaintiff has been healthy throughout his lifetime prior to this incident. He can recall no specific medical problems or care prior to this accident. His primary health care provider is: Dr. Christopher Ritchie . . . . The following are health care providers since the accident: . . . .

With Kerr's original response to Interrogatory No. 12, and the supplemental response, BNSF could reasonably believe that Kerr suffered no physical, mental or emotional injury which required him to seek medical or professional services, and that any physical, mental or emotional condition which Kerr may now have is directly attributable to the accidental injury of February 14, 1997. Indeed, Kerr specifically denied having any medical history prior to the February 1997 train accident.

Not content with Kerr's answer, BNSF began sending Kerr's medical release to all health care providers in the State of Oregon where Kerr previously resided. One health care provider, Emmanuel Hospital, had medical records relating to a serious automobile accident occurring in May 1987. Kerr was involved in a serious motor vehicle accident resulting in a fatality. The one-vehicle accident allegedly occurred when Kerr lost control of the vehicle, rolled it, and the vehicle exploded into flames. Kerr's passenger, his girlfriend, was killed and Kerr suffered burns to 27.5% of his body. A notation in the medical report states that Kerr had consumed alcohol and cocaine prior to the

4

accident. As a result of the accident, Kerr was hospitalized for one week and received out-patient care for a some time thereafter. It is unlikely that BNSF would have learned of the prior accident and alleged drug use, but for BNSF's dogged efforts to get at the truth.

Kerr concedes that he did not disclose this information, but contends that he didn't try to conceal information. He says he was traumatized by the February accident, and this trauma affected his ability to respond to the interrogatories. He argues, "There was no wilfulness or bad faith. Plaintiff has had a traumatic injury which has effected his psyche. His answers were evidence of how severely the injury has affected him." (Kerr's response, p. 5, ¶ 3). BNSF contends that dismissal is appropriate whenever a litigant provides false and misleading discovery responses.

## **Analysis**

There is ample authority to dismiss a litigant's claim with prejudice as a Rule 37 sanction when a litigant "wilfully provided false and misleading answers on a continual basis during the discovery process." Archibeque v. Atchison, Topeka & Santa Fe Railway Co., 70 F.3d 1172, 1173 (10th Cir. 1995).

In Archibeque, the plaintiff brought an action against Atchison, Topeka & Santa Fe Railway Co. ("AT&SF") for personal injuries allegedly suffered while the plaintiff was employed with AT&SF. She claimed to have suffered a herniated disk in her lower back as a result of an unwitnessed, work-related accident. AT&SF believed that plaintiff's injury might be related to prior accidents and requested that plaintiff provide a complete list of health care providers who had treated her, together with a description of injuries she suffered and the treatment received.

Plaintiff provided the names of various health care providers, but failed to mention she had received treatment relating to her back or tail bone prior to the date of her accident at AT&SF.

Further, in response to a question concerning any serious physical injury she had suffered prior to the date of her work-related accident, Archibeque did not disclose any back injury and denied having any back pain prior to the date of the accident with AT&SF. Finally, at her deposition, she claimed to have no recollection of any lower back pain prior to the date of the injury allegedly sustained will working at AT&SF.

In that case, as here, AT&SF sought to independently confirm the veracity of the responses to interrogatories and learned that, for a ten-year period prior to the date of the accidental injury which formed the basis of Archibeque's suit, she had sought and received medical treatment for low back pain and tail bone pain. Indeed, AT&SF discovered records showing that plaintiff sought care from as many as six different physicians over a significant period of time, and on at least fifteen occasions, obtained treatment for a variety of low back ailments and pains. As a result of the information AT&SF discovered, it moved to dismiss plaintiff's claim pursuant to Rule 37(d), contending that Archibeque had attempted to conceal her medical history, lied, and, thus, failed to cooperate in the discovery process. Archibeque argued that the failure to completely disclose the past medical history was an oversight, that the treatment previously received dealt with her tail bone rather than her back, and that she had been fully cooperative in the discovery process.

The district court disagreed and found that Archibeque's failure "to disclose her numerous complaints and treatments involving her low back and tail bone . . . [could not] reasonably be classified as `mere oversight'." Id. at 1174. The court concluded that Archibeque's actions "irreparably prejudiced [AT&SF] in the preparation of its defense.", and that Archibeque's conduct "seriously interfered with the judicial process." As a result, the court dismissed Archibeque's lawsuit as a discovery sanction.

6

On appeal, the circuit court affirmed the dismissal of the case, noting that in Ehrenhaus v. Reynolds, 965 F.2d 916 (10th Cir. 1992), there were several factors that the court should consider prior to utilizing the harshest sanction of dismissal. The Ehrenhaus factors do not constitute a rigid test, and as long as the district court considers all of the factors, the court is free to give greater or lesser weight to them based on the circumstances of the case. The Court concluded, "Here, the egregious nature of appellant's conduct, the effect on AT&SF and the interference with the judicial process properly led to the dismissal." Id. at 1175.

Indeed, this same approach was taken by the New Mexico Court of Appeals in Sandoval v. Martinez, 109 N.M. 5, 780 P.2d 1152 (Ct. App. 1989). There, New Mexico's intermediate appellate court considered whether a trial court properly dismissed a lawsuit with prejudice on the ground that the plaintiff lied in answers to interrogatories. The Sandoval court found that Rule 37 provides that dismissal of a lawsuit may be a proper sanction for not making discovery and that a false answer to an interrogatory can be tantamount to no response at all. In an articulate, well-reasoned opinion, the court stated:

> An interrogatory answer that falsely denies the existence of discoverable information is not exactly equivalent to no response. It is worse than no response. When there is no response to an interrogatory or the response is devoid of content, the party serving the interrogatory at least knows that it has not received an answer. It can move the Court for an order to compel a response pursuant to Rule 1-037(A). If the response is false, however, the party serving the interrogatory may never learn that it has not really received the answer to the interrogatory. The obstruction to the discovery process is much graver when a party denies having had a prior accident than when the party refused to respond to an interrogatory asking if there have been any prior accidents.

Sandoval, 109 N.M. at 8-9, 780 P.2d at 55-56.

In the Sandoval case, the plaintiff brought suit against the defendant for personal injuries allegedly suffered to her neck, back and legs in an automobile accident. Three interrogatories asked whether she had ever been in a prior auto accident, whether she suffered any physical injury in such an accident, and whether she had undergone any surgical proceedings prior to the accident in question. She responded, "N/A" to each question. Defendant's counsel later discovered that plaintiff had suffered injuries in two prior automobile accidents, one requiring surgery, and that in the prior accidents, the injuries she suffered were the same or similar to the injuries of which she complained in the instant action. In that case, the district court dismissed plaintiff's lawsuit because of her wilful, bad-faith falsehoods.

The New Mexico Trial Lawyers Association and New Mexico Defense Lawyers Association participated as a *amici curiae* in the Sandoval case, and each expressed concern that the availability of a sanction of dismissal for perjury would encourage litigators to try to avoid a loss on the merits by excessive discovery activity and motion practice. Both *amici* cautioned judicial restraint in this area. They argued that the trial itself is generally the proper forum to determine whether a party lied on the merits.

The Archibeque and Sandoval cases are different than the case at bar because the lies went to material elements of the claims being advanced, and the deception was critical to defendant's trial preparation.

Such is not true here. Kerr's deception is significantly different. The Court finds that Kerr's responses are arguably not improper. BNSF's initial interrogatories were served on April 16, 1998. Interrogatory No. 12, the one requesting information concerning medical care and treatment at hospitals, clinics or other institutions, required Kerr to provide information "within the last ten years."

The interrogatory did not state "within the last ten years prior to filing suit," or "within the last ten years prior to the February 14, 1997 accident." It would have been reasonable for Kerr to believe that BNSF sought information for the last ten years prior to the service of interrogatories. The interrogatories were served on April 16, 1998. Thus, the relevant time period could be calculated to start on April 16, 1988. The medical records uncovered by BNSF indicate that the accident occurred on May 12, 1987 and Kerr was dismissed from the hospital on May 18, 1987. Thus, the accident, hospital admission, and at least the initial treatments occurred outside, although barely, the ten-year period for which information was sought. Thus, BNSF may be hard pressed to show that Kerr lied about health care providers or medical treatment "within the last ten years." While there is an indication that Kerr continued with some out-patient treatment following his release, the Court is unable to ascertain whether that treatment is within or outside the ten-year period for which information was sought. The Court therefore cannot conclude that Kerr's initial response to this interrogatory constituted willful deception, because the treatment occurred outside the ten-year period for which BNSF sought information.

Likewise, in reference to the other interrogatory, it is arguable that Kerr did not consider his military service as "employment." Indeed, the question is calculated to obtain information about employment, and military service does not fit into the generally accepted concept of employment. There is not doubt, however, that military service was "income producing activity." The Court is not convinced that Kerr's failure to disclose his prior military service was intended to hide the fact that he received a less-than-honorable discharge.

In addition, Kerr's responses do not go to material elements of the claims being advanced, nor was the deception critical to BNSF's trial preparation. Kerr's claim concerns an amputated leg.

9

While Kerr failed to disclose a prior automobile accident, serious as it was, there is little overlap in his present claim as compared to the injuries suffered in the prior accident.[2]

In addition, BNSF has not shown that it has been prejudiced in the preparation of its defense. To the contrary, following receipt of the Court-ordered medical release form, BNSF circulated the release form at random to a variety of medical health care providers in Kerr's home town. BNSF does not argue that, but for Kerr's inadequate response, it would hot have circulated the medical release forms to health care providers. Thus, it is likely that, in any event, BNSF would have spent the time and money in verifying Kerr's representations. Morever, enough though it was fortuitous that BNSF discovered Kerr's deception, it was discovered in time and BNSF has not been critically prejudiced in preparing for trial.

What is troubling, however, is Kerr's response to the August 31, 1998 Court order, wherein Kerr was directed to provide an affidavit outlining why he has been unable to respond to the interrogatory. In lieu of an affidavit, he responded that he has been healthy all of his life and he could not recall any medical care or medical problems prior to the train accident. This statement is false and misleading. It is highly unlikely that an accident resulting in the death of a passenger, a burning car, and burns to nearly a third of his body would have "slipped Kerr's mind" when responding to the Court's August 31, 1998 order. Indeed, this would have been an appropriate juncture to bring to the Court's attention any confusion regarding the dates covered by the ten-year request. This was not done. The failure to seek clarification, coupled with Kerr affirmation that he could recall no specific prior medical problem, requires a Coleridgean "suspension of disbelief" for the Court to accept.

---

[2]The Court recognizes that an argument can be made that part of Kerr's emotional injury claim might be attributed to feelings of guilt or remorse due to the death of his girl friend, especially, if Kerr's cocaine use caused or contributed to the cause of his automobile accident. However, there is no physical injury overlap.

10

Disclosure of the prior medical reports would have alerted BNSF early on about Kerr's alleged drug usage. The hospital records relating to Kerr's accident ten years before contain a reference to possible, but disputed, cocaine use. While evidence of cocaine use ten years before would not be relevant to the present case, discovery of that information might have allowed BNSF to pursue a line of inquiry concerning whether any present drug use caused or contributed to Kerr's accidental injury on the train tracks. Because New Mexico is a comparative negligence state, drug use, if any, might be a factor the jury would weigh in apportioning fault.

Applying the factors set forth in Ehrenhaus v. Reynolds, the Court determines that the extreme sanction of dismissal of the lawsuit is not appropriate. However, the Court further finds that a lesser sanction is appropriate and will reprimand Kerr for his false and misleading discovery response concerning his supplemental response to Interrogatory No. 12. The imposition of monetary sanctions will deter others from engaging in similar practice, and will compensate BNSF for having brought this issue to the Court's attention. The Court determines that Kerr be required to pay a monetary sanction to the Clerk of the Court in the amount of $250.

_____
Lorenzo F. Garcia
United States Magistrate Judge

ATTORNEY FOR PLAINTIFF:
Derek V. Larson, Esq.

ATTORNEYS FOR DEFENDANTS:
John S. Thal, Esq.
Karen Scott Kool, Esq.